1 | JEMMA E. DUNN
Nevada Bar No. 16229
2 | MATTHEW T. HALE
Nevada Bar No. 16880
3 | MICHAEL A. BURNETTE
Nevada Bar No. 16210
4 | **GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
5 | Las Vegas, Nevada 89135
Telephone: (702) 777-0888
6 | Facsimile: (702) 777-0801
  *MBurnette@GGTrialLaw.com*
7 |   *JDunn@GGTrialLaw.com*
  *MHale@GGTrialLaw.com*
8 |
*Attorneys for Plaintiff*
9 | *Shawncie Cabral*

10 | **UNITED STATES DISTRICT COURT**

11 | **DISTRICT OF NEVADA**

12 |

| | |
|---|---|
| SHAWNICE CARBAL, an individual, | Case No.: 2:25-CV-00860-MMD-EJY |
|        Plaintiff, | **ORDER GRANTING STIPULATION FOR DISMISSAL WITHOUT PREJUDICE OF PREGNANCY DISCRIMINATION CLAIMS AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
|        v. | |
| FIRSTSERVICE RESIDENTIAL, NEVADA, LLC dba FIRSTSERVICE RESIDENTIAL NEVADA, a Delaware limited-liability company, | |
|        Defendant. | |

23 |      Plaintiff Shawnice Cabral (Plaintiff), by and through her counsel of record Greenberg Gross

24 | LLP, and Defendant FirstService Residential, Nevada, LLC (Defendant), by and through its counsel

25 | of record King Scow Koch Durham LLC, hereby stipulate and agree as follows:

26 | ///

27 | ///

28 | ///

1    **I.      Dismissal of Plaintiff's Pregnancy Claims for Relief**

2              Pursuant to FRCP 41(a)(1)(ii) the parties hereby stipulate to the dismissal without

3    prejudice of the following Claims for Relief from Plaintiff's First Amended Complaint [ECF No.

4    14]:

5    - **Claim for Relief 1:** Workplace Discrimination in Violation of 42 U.S.C. § 2000e et seq.

6    - **Claim for Relief 5:** Retaliation in Violation of 42 U.S.C. § 2000e et seq.

7    - **Claim for Relief 10:** Discrimination in Violation of the PWFA

8    - **Claim for Relief 11:** Failure to Accommodate in Violation of the PWFA

9    - **Claim for Relief 12:** Retaliation in Violation of the PWFA

10   - **Claim for Relief 13:** Discrimination in Violation of the Nevada PWFA

11   - **Claim for Relief 14:** Failure to Accommodate in Violation of the Nevada PWFA

12   - **Claim for Relief 15:** Retaliation in Violation of the Nevada PWFA

13             The dismissal of these claims shall be without prejudice. This Stipulation shall not be

14   construed as an admission by either party of any wrongdoing, liability, or the validity or invalidity

15   of any claim or defense.

16   **II.     Leave To File Second Amended Complaint**

17             Pursuant to FRCP 15(a)(2), the parties stipulate to the submission of Plaintiff's Second

18   Amended Complaint attached hereto as Exhibit 1. The proposed Second Amended Complaint shall

19   not include the claims dismissed herein without prejudice.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

III.    **Conclusion**

The parties respectfully request that this Court enter an Order approving this Stipulation and dismissing Claims for Relief 1, 5, 10, 11, 12, 13, 14, and 15 from Plaintiff's First Amended Complaint without prejudice and to grant Plaintiff leave to file the Second Amended Complaint.

Dated this 29th day of September, 2025

| | |
|---|---|
| */s/ Michael A. Burnette* | */s/ Matthew L. Durham* |
| JEMMA E. DUNN | STEVEN B. SCOW |
| Nevada Bar No. 16229 | Nevada Bar No. 9906 |
| MATTHEW T. HALE | MATTHEW L. DURHAM |
| Nevada Bar No. 16880 | Nevada Bar No. 10342 |
| MICHAEL A. BURNETTE | MACKENZIE SODERBERG |
| Nevada Bar No. 16210 | Nevada Bar No. 16564 |
| GREENBERG GROSS LLP | KING SCOW KOCH DURHAM LLC |
| 1980 Festival Plaza Drive, Suite 730 | 11500 S. Eastern Ave., Suite 210 |
| Las Vegas, Nevada 89135 | Henderson, Nevada 89052 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

**ORDER**

IT IS SO ORDERED:

_____

UNITED STATES DISTRICT JUDGE

DATED: September 30, 2025

# EXHIBIT 1

JEMMA E.  DUNN
Nevada Bar No. 16229
MATTHEW T. HALE
Nevada Bar No. 16880
MICHAEL A. BURNETTE
Nevada Bar No. 16210
**GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Telephone: (702) 777-0888
Facsimile: (702) 777-0801
 *JDunn@GGTrialLaw.com*
 *MHale@GGTrialLaw.com*
 *MBurnette@GGTrialLaw.com*

*Attorneys for Plaintiff*
*Shawnice Cabral*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHAWNICE CABRAL, an individual, | Case No.: 2:25-cv-00860-MMD-EJY |
| Plaintiff, | **PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES** |
| v. | |
| FIRSTSERVICE RESIDENTIAL, NEVADA, LLC dba FIRST SERVICE RESIDENTIAL NEVADA, a Delaware limited-liability company, | **(1)    DISCRIMINATION (N.R.S. § 613.330);** |
| | **(2)    DISCRIMINATION (42 U.S.C. § 12112 *et seq.*);** |
| Defendant. | **(3)    RETALIATION (N.R.S. § 613.340);** |
| | **(4)    RETALIATION (42 U.S.C. § 12203 *et seq.*);** |
| | **(5)    FAILURE TO PROVIDE REASONABLE ACCOMMODATION;** |
| | **(6)    FMLA INTERFERENCE;** |
| | **(7)    RETALIATION IN VIOLATION OF THE FMLA;** |
| | **DEMAND FOR JURY TRIAL** |

Shawnice Cabral ("Ms. Cabral" or "Plaintiff") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Plaintiff's claims for damages arise, in part, under 29 CFR § 825.220 (FMLA), 42 U.S.C. § 12112 *et seq*. (ADA Discrimination), 42 U.S.C. § 12203 *et seq* (ADA Retaliation); and 42 U.S.C. 2000gg *et seq.* (PWFA).  The Court has supplemental jurisdiction over the remaining state statutory claims pursuant to 28 U.S.C. § 1367, given that all the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.  Further, this Court has grounds for diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Additionally, there is complete diversity of citizenship between the parties, as Ms. Cabral is a citizen of Nevada and Defendant FirstService Residential, Nevada, LLC (hereafter, "FirstService" or "Defendant") is a Delaware limited-liability company that conducts business in Clark County as FirstService Residential, Nevada, LLC.

2.      Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 because FirstService resides in Clark County, Nevada and  a substantial part of the events giving rise to each of Ms. Cabral's claims occurred in, Clark County, Nevada.

## NATURE OF THE ACTION

3.      Ms. Cabral, a qualified Banking Coordinator suffered from documented disabilities and serious health conditions including depression and anxiety, and endured three termination attempts by FirstService while on approved medical leave under the ADA and FMLA.  Despite Ms. Cabral diligently providing doctor's notes extending her leave and repeatedly having terminations rescinded when she objected to the unlawful interference with her FMLA rights and unlawful terminations under the ADA, FirstService terminated her employment for the third and final time on September 26, 2022, mere weeks before her doctor-approved October 15, 2022, return date.

## PARTIES

4.      Ms. Cabral is and was at all relevant times herein, a resident of Clark County, Nevada.

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

5.      Defendant FirstService Residential, Nevada, LLC, is a Delaware limited-liability company that conducts business in Clark County as First Service Residential Nevada. FirstService Residential, Nevada, LLC is registered and qualified to do business in Nevada and regularly conducts business in Clark County, Nevada.

## FACTUAL ALLEGATIONS

6.      On or about February 15, 2021, Ms. Cabral began working as a Banking Coordinator for FirstService, handling money movement transactions for HOA properties in Las Vegas, including opening/closing bank accounts, updating signature cards, processing tax payments, and completing investment analysis.

7.      In or around November 2021, Ms. Cabral began experiencing symptoms of depression and anxiety, for which she sought treatment from her medical provider.

8.      Ms. Cabral's anxiety and depression constituted disabilities as they substantially limited her ability to perform major life activities including working. Additionally, her anxiety and depression constituted serious health conditions as they required continuing treatment from her medical provider.

9.      In administering FMLA leave, disability benefits, and medical leave under the ADA, FirstService relied on determinations made by The Hartford. By delegating core employer responsibilities related to medical leave management to The Hartford, FirstService effectively authorized The Hartford to act as its agent in evaluating employee leave requests.

10.     In or around February 2022, Ms. Cabral requested FMLA leave and disability benefits through FirstService's third party administrator, the Hartford. Shortly thereafter, the Hartford approved Ms. Cabral's request for disability benefits and FMLA leave to treat her disabilities and serious health conditions. Ms. Cabral was approved for FMLA leave from February 17, 2022, through May 16, 2022.

11.     On or about May 6, 2022, Ms. Cabral provided FirstService Residential a note from her medical provider that recommended she remain out of work until August 5, 2022. FirstService promptly approved Ms. Cabral's request for reasonable accommodation.

12.     On or about May 16, 2022, the day before Ms. Cabral's FMLA entitlement was set

-3-

to expire, FirstService Residential willfully interfered with Ms. Cabral's FMLA rights when Miriam Rodriguez, Payroll Administrator, terminated Ms. Cabral's employment. Ms. Rodriguez, as a payroll administrator with knowledge of FMLA requirements, knew that terminating an employee before their FMLA entitlement expired was unlawful, yet she recklessly disregarded Ms. Cabral's FMLA entitlement and proceeded with the termination anyways. Ms. Rodriguez demonstrated a reckless disregard for Ms. Cabral's rights under the FMLA by falsely claiming there were no further extensions available for Ms. Cabral's medical leave, despite FirstService having received and approved documentation from Ms. Cabral's healthcare provider extending her leave through August 5, 2022.

13.     On or about May 18, 2022, Ms. Cabral contacted Chona Vallejo, Human Resources Manager, and objected to her unlawful termination while on FMLA leave. Ms. Vallejo immediately reversed the termination decision and extended Ms. Cabral's leave through August 5, 2022, explicitly assuring her in writing that she would retain "the same role that I've held during my tenure at FirstService, or a financially lateral role." Ms. Vallejo's swift reversal and written position guarantee demonstrates FirstService Residential's awareness of the FMLA violation. During this interaction, Ms. Cabral also requested and received approval for extended medical leave through August 2022.

14.     Following the reversal of FirstService's decision to terminate Ms. Cabral's employment, FirstService sought to sabotage the disability benefits Ms. Cabral was receiving through the Hartford by sending the Hartford images from Ms. Cabral's social media accounts to discredit the validity of her disabilities. Following FirstService's actions, Ms. Cabral underwent a lengthy review process for her disability benefits through the Hartford where she provided numerous doctors' notes and even underwent independent medical examinations to establish that she was in fact disabled and entitled to disability benefits.

15.     On or about July 26, 2022, the Hartford denied extending Ms. Cabral's disability benefits based upon an independent medical examiner's opinion that she "was able to function at home and in the community, as well as manage finances." On or about August 9, 2022, Ms. Cabral appealed the denial of her disability benefits through the Hartford. Ms. Cabral explained that the

-4-

social media posts provided to the Hartford which formed the basis for the denial of her disability benefits were taken before she went on FMLA leave.

16.    On or about August 16, 2022, Ms. Cabral provided the Hartford an updated note from her medical provider that recommended she remain out of work until September 1, 2022, in connection with her disability benefits appeal.

17.    On or about August 17, 2022, Ms. FirstService terminated Ms. Cabral's employment for the second time around through Ms. Vallejo. After Ms. Vallejo terminated Ms. Cabral's employment, she explained she was waiting for her doctor to provide an updated note in connection with her appeal process through the Hartford. Ms. Cabral then promptly provided the doctor's note excusing her from work until September 1, 2022, to Ms. Vallejo and FirstServices reversed its decision to terminate Ms. Cabral's employment.

18.    On or about August 30, 2022, Ms. Cabral contacted Jennifer Severs, Human Resources Manager, and requested an extension of her medical leave. On or about September 1, 2022, Ms. Cabral contacted Ms. Severs again and discussed how she had opposed FirstService's unlawful conduct by interfering with her rights under the FMLA and threats to terminate her employment while on approved medical leave.

19.    On or about September 7, 2022, Ms. Cabral contacted Ms. Severs again and informed her that her medical provider was going to provide her a note requesting an extension of her medical leave.

20.    On or about September 13, 2022, Ms. Cabral informed Ms. Severs that she was still in the process of obtaining a return to work note. On or about September 23, 2022, Ms. Cabral provided FirstService Residential a note that stated she could return to work on October 15, 2022.

21.    On September 26, 2022, just shy of a month after Ms. Cabral engaged in protected activity of opposing FMLA violations, and a mere three days after she provided documentation for an October 15, 2022, return date, FirstService Residential retaliated against Ms. Cabral and terminated her employment.

22.    The decision to terminate Ms. Cabral's employment shortly after she opposed unlawful practices in violation of the FMLA demonstrates FirstService's reckless disregard of her

-5-

rights under the FMLA to engage in protected activity without fear of retaliation. FirstService's retaliatory intent is further evidenced by their decision to terminate Ms. Cabral despite having received medical documentation setting a firm return date.

23. *Plaintiff's Protected Statuses and Activities:* Ms. Cabral is a member of protected classes based on her disabilities (anxiety and depression). Her protected activities include opposing First Service's discriminatory practices under the FMLA and ADA and requesting reasonable accommodations for her disabilities.

24. On February 15, 2023, Ms. Cabral timely dual filed a charge of discrimination with the Nevada Equal Rights Commission ("NERC") and the Equal Employment Opportunity Commission. On February 21, 2025, NERC closed Ms. Cabral's case without making findings and issued her a right to sue notice. Ms. Cabral timely filed the instant lawsuit within 90 days of the right to sue notice.

25. *Punitive damages*: Ms. Cabral is entitled to punitive damages. (42 U.S.C. § 1981a(b); Nevada Revised Statute ("N.R.S.") 42.001, 42.007.)

26. *Reckless Indifference and Conscious Disregard*: FirstService knew of the probable economic harm and emotional distress that would ensue as a result of the wrongful conduct perpetrated. Yet, FirstService willfully and deliberately caused the wrongful conduct, both through its actions and inactions.

27. *Malice*: The conduct of FirstService was committed with malice, including that (a) FirstService acted with intent to cause injury to Ms. Cabral and/or acted with reckless disregard for Ms. Cabral's injury, including by terminating Ms. Cabral's employment and/or taking other adverse job actions against Ms. Cabral because of their good faith complaints, and/or (b) the conduct of FirstService was despicable and committed in willful and conscious disregard of Ms. Cabral's rights to work in a workplace free of unlawful harassment, or the economic and emotional distress such harassment and discrimination would cause.

28. *Oppression:* In addition, and/or alternatively, The conduct of FirstService was committed with oppression, including that the actions of FirstService against Ms. Cabral were cruel and subjected her to unjust hardship and with conscious disregard of Ms. Cabral's rights to work in

1  a workplace free of unlawful harassment, or the economic and emotional distress such harassment and

2  discrimination would cause.

3      29.    *Fraud:* In addition, and/or alternatively, the conduct of FirstService, as alleged, was

4  fraudulent, including that FirstService asserted false and pretextual grounds for terminating Ms.

5  Cabral's employment and/or other adverse job actions, thereby causing Ms. Cabral hardship and

6  deprive her of legal rights or otherwise injure Ms. Cabral.

7      30.    Further, FirstService is liable for the wrongful acts of its employees, including its

8  supervisory personnel, because FirstService had advance knowledge that these employees were

9  unfit for the purposes of the employment and yet employed these employees with a conscious

10  disregard for the rights or safety of others.  (42 U.S.C. § 2000e(b); N.R.S. 42.007.)

11                          **FIRST CLAIM FOR RELIEF**

12              **Workplace Discrimination in Violation of N.R.S. § 613.330**

13      31.    The allegations set forth in preceding paragraphs are re-alleged and incorporated

14  herein by reference.

15      32.    As defined by N.R.S. § 613.310 Ms. Cabral was employed by FirstService.

16  FirstService is an employer, as defined by N.R.S. § 613.310, and thus is prohibited from

17  discriminating against any person with respect to the person's compensation, terms, conditions, or

18  privileges of employment on the basis of any protected status as set forth in N.R.S. § 613 *et seq.*

19  Further, employers must provide a workplace free of discrimination on the basis of these protected

20  statuses.

21      33.    The acts and omissions of FirstService, as more fully set forth herein, constituted

22  discrimination on the bases of a protected status or statuses within the meaning of N.R.S. § 613.330.

23      34.    Ms. Cabral is within the class of persons that N.R.S. § 613.330 intends to protect and

24  termination of employment on the basis of discrimination is the type of injury prohibited by N.R.S.

25  § 613.330.

26      35.    Ms. Cabral charges that FirstService discriminated against Ms. Cabral based on her

27  protected status or statuses.

28      36.    As a direct and proximate result of the violations and conduct described herein, Ms.

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  Cabral was subjected to unlawful discrimination, loss of her employment, and loss of income and

2  benefits.  In addition, Ms. Cabral has suffered physical and mental injury, and will continue to suffer

3  great financial, mental and emotional injury, pain and distress.

4       37.    Due to this action, it has been necessary for Ms. Cabral to expend court costs and

5  obtain the services of an attorney to pursue this claim.  As such, Ms. Cabral is entitled to recover

6  costs pursuant to N.R.S. § 18.020, as well as attorneys' fees under N.R.S. § 613.432 and 42 U.S.C.

7  § 2000e-5(k).

8       38.    The acts of FirstService alleged herein were undertaken with malice, with intent to

9  injure Ms. Cabral, or with reckless indifference or conscious disregard of her rights, and constitute

10  oppressive, fraudulent, and malicious conduct, undertaken with knowing disregard for Ms. Cabral's

11  rights or the inevitable resulting harm.  As a result, Ms. Cabral is entitled to an award of punitive

12  and exemplary damages in an amount sufficient to punish FirstService, and to make an example of

13  and deter FirstService from engaging in such conduct in the future.

14                    **SECOND CLAIM FOR RELIEF**

15         **Workplace Discrimination in Violation of 42 U.S.C. § 12112 et seq.**

16       39.    The allegations set forth in preceding paragraphs are re-alleged and incorporated

17  herein by reference.

18       40.    Ms. Cabral is a member of the class of persons protected by federal statutes

19  prohibiting discrimination based on disability.

20       41.    FirstService, employed Ms. Cabral, as defined by 42 U.S.C. § 12111(5), and thus

21  was prohibited from discriminating against qualified individuals with disabilities as set forth in 42

22  U.S.C. § 12112(a).

23       42.    Ms. Cabral has a disability or disabilities as defined by 42 U.S.C. § 12102(1).

24       43.    Ms. Cabral was qualified to perform the essential functions of her job, with or

25  without reasonable accommodation.

26       44.    FirstService took adverse employment actions against Ms. Cabral because of her

27  disability or disabilities, including the decisions to terminate Ms. Cabral's employment, not to retain,

28  hire, or otherwise employ Ms. Cabral in any position, and/or to take other adverse employment

-8-

actions against Ms. Cabral.

45.     The discriminatory acts of FirstService constitute a violation of the Americans with Disabilities Act (ADA), which makes it unlawful for an employer to discriminate against an employee on the basis of disability.

46.     The discriminatory acts of FirstService have caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and have caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

47.     The acts of FirstService alleged herein were undertaken with malice, with intent to injure Ms. Cabral, or with reckless indifference or conscious disregard of her rights, and constitute oppressive, fraudulent, and malicious conduct, undertaken with knowing disregard for Ms. Cabral's rights or the inevitable resulting harm.  As a result, Ms. Cabral is entitled to an award of punitive and exemplary damages in an amount sufficient to punish FirstService, and to make an example of and deter FirstService from engaging in such conduct in the future.

48.     Ms. Cabral has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to 42 U.S.C. § 12205, Ms. Cabral will move to recover reasonable attorneys' fees and costs in an amount according to proof.

### **THIRD CLAIM FOR RELIEF**

**Workplace Retaliation in Violation of N.R.S. § 613.340**

49.     The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

50.     Ms. Cabral was employed by FirstService.

51.     Ms. Cabral engaged in protected activity.

52.     FirstService was aware of Ms. Cabral's protected activity.

53.     After engaging in protected activity, Ms. Cabral suffered an adverse employment action.

54.     There is a causal connection between Ms. Cabral's protected activity and the adverse employment action.

55.     The conduct of FirstService alleged herein have caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and have caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

56.     The acts alleged herein were undertaken with the malice, with intent to injure Ms. Cabral, or with reckless indifference or conscious disregard of her rights, and constitute oppressive, fraudulent, and malicious conduct, undertaken with knowing disregard for Ms. Cabral's rights or the inevitable resulting harm.  As a result, Ms. Cabral is entitled to an award of punitive and exemplary damages in an amount sufficient to punish FirstService, and to make an example of and deter FirstService from engaging in such conduct in the future.

57.     Due to this action, it has been necessary for Ms. Cabral to expend court costs and obtain the services of an attorney to pursue this claim. As such, Ms. Cabral is entitled to recover costs pursuant to NRS 18.020, as well as attorneys' fees under NRS 613.432 and 42 U.S.C. § 2000e-5(k).

### FOURTH CLAIM FOR RELIEF

**Retaliation in Violation of 42 U.S.C. § 12203 *et seq.***

58.     The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

59.     Ms. Cabral is within the class of persons that 42 U.S.C. § 12203 intends to protect and retaliation for engaging in protected activity is the type of injury prohibited by 42 U.S.C. § 12203.

60.     Ms. Cabral was an "employee" of FirstService, as defined by 42 U.S.C. § 12111(4).

61.     FirstService was an employer, as defined by 42 U.S.C. § 12111(5), and thus was barred from retaliating against any person for opposing or reporting any unlawful discrimination or harassment against employees on a protected basis as set forth in 42 U.S.C. § 12101 *et seq*. as well as against any person for requesting an accommodation as provided under the same the statute.

62.     Ms. Cabral opposed and reported discriminatory or harassing conduct prohibited by 42 U.S.C. § 12101 *et seq*. and/or requested an accommodation as provided under the same statute.

63.      As a result of Ms. Cabral's complaints regarding, opposition to, and/or requests for accommodation related to these unlawful practices, FirstService engaged in a course of retaliatory conduct, which included subjecting Ms. Cabral to a hostile work environment.

64.      The conduct of FirstService constitutes retaliation in violation of the Americans with Disabilities Act of 1990, as amended, which makes it unlawful for an employer to retaliate against an employee who complains about, opposes discrimination or harassment, or requests an accommodation.

65.      The conduct of FirstService alleged herein has caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and has caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

66.      The acts of FirstService alleged herein were undertaken with malice, with intent to injure Ms. Cabral, or with reckless indifference or conscious disregard of her rights, and constitute oppressive, fraudulent, and malicious conduct, undertaken with knowing disregard for Ms. Cabral's rights or the inevitable resulting harm.  As a result, Ms. Cabral is entitled to an award of punitive and exemplary damages in an amount sufficient to punish FirstService, and to make an example of and deter FirstService from engaging in such conduct in the future.

67.      Ms. Cabral has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to 42 U.S.C. § 12205, Ms. Cabral will move to recover reasonable attorneys' fees and costs in an amount according to proof.

## FIFTH CLAIM FOR RELIEF

**Failure to Provide Reasonable Accommodation in Violation of 42 U.S.C. § 12112(b)(5)**

68.      The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

69.      Ms. Cabral is a member of the classes of persons protected by federal statutes requiring reasonable accommodation for disabilities.

70.      Ms. Cabral was an employee, as defined by 42 U.S.C. § 12111(4).

71.      FirstService employed Ms. Cabral, as defined by 42 U.S.C. § 12111(5), and thus was

-11-

required to provide reasonable accommodation to qualified individuals with disabilities as set forth in 42 U.S.C. § 12112(b)(5).

72.    Ms. Cabral has a disability as defined by 42 U.S.C. § 12102(1).

73.    Ms. Cabral requested reasonable accommodation for her disability.

74.    FirstService failed to provide reasonable accommodation for Ms. Cabral's disability.

75.    The failure of FirstService to provide reasonable accommodation constitutes a violation of the ADA, which makes it unlawful for an employer to fail to provide reasonable accommodation to an employee with a disability.

76.    The acts of FirstService alleged herein have caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and have caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

77.    The acts of FirstService alleged herein were undertaken with malice, with intent to injure Plaintiff, or with reckless indifference or conscious disregard of her rights, and constitute oppressive, fraudulent, and malicious conduct, undertaken with knowing disregard for Ms. Cabral's rights or the inevitable resulting harm.  As a result, Ms. Cabral is entitled to an award of punitive and exemplary damages in an amount sufficient to punish FirstService, and to make an example of and deter FirstService from engaging in such conduct in the future.

78.    Ms. Cabral has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to 42 U.S.C. § 12205, Ms. Cabral will move to recover reasonable attorneys' fees and costs in an amount according to proof.

### SIXTH CLAIM FOR RELIEF

### Interference with FMLA Rights in Violation of 29 CFR § 825.220

79.    The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

80.    Ms. Cabral is a member of the classes of persons protected by federal statutes prohibiting interference with the exercise of rights under the Family and Medical Leave Act (FMLA).

81.     Ms. Cabral was an eligible employee, as defined by 29 U.S.C. § 2611(2).

82.     FirstService was an employer, as defined by 29 U.S.C. § 2611(4), and thus was barred from interfering with, restraining, or denying the exercise of or the attempt to exercise any rights provided under the FMLA.

83.     Ms. Cabral exercised or attempted to exercise rights provided under the FMLA, including but not limited to requesting and/or taking leave for a serious health condition.

84.     As a result of Ms. Cabral's exercise or attempt to exercise FMLA rights, FirstService engaged in a course of conduct that willfully interfered with, restrained, and/or denied Ms. Cabral's rights under the FMLA, which included but was not limited to denying leave, discouraging Ms. Cabral from taking leave, and/or retaliating against Ms. Cabral for taking or requesting leave.

85.     The conduct of FirstService constitutes willful interference with Ms. Cabral's rights in violation of the Family and Medical Leave Act of 1993, as amended, which makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any rights provided under the FMLA.

86.     The acts of FirstService alleged herein were undertaken willfully, with knowledge and reckless disregard that they would violate Ms. Cabral's rights under the FMLA.

87.     The acts of FirstService alleged herein have caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and have caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

88.     Ms. Cabral has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to 29 U.S.C. § 2617(a)(3), Ms. Cabral will move to recover reasonable attorneys' fees and costs in an amount according to proof.

## SEVENTH CLAIM FOR RELIEF

### FMLA Retaliation in Violation of 29 CFR § 825.220

89.     The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

90.     Ms. Cabral is a member of the classes of persons protected by federal statutes

-13-

prohibiting retaliation for exercising rights under the Family and Medical Leave Act (FMLA).

91.    Ms. Cabral was an eligible employee, as defined by 29 U.S.C. § 2611(2).

92.    FirstService was an employer, as defined by 29 U.S.C. § 2611(4), and thus was barred from retaliating against any person for opposing unlawful conduct under the FMLA.

93.    Ms. Cabral engaged in protected activity when she opposed discriminatory conduct under the FMLA.

94.    As a result of Ms. Cabral's opposition to FirstService's unlawful violations of the FMLA, FirstService engaged in a course of willful retaliatory conduct, which included but was not limited to subjecting Ms. Cabral to adverse employment actions such as demotion, reduction in pay, denial of promotion, and/or termination.

95.    The conduct of FirstService constitutes willful retaliation in violation of the Family and Medical Leave Act of 1993, as amended, which makes it unlawful for an employer to retaliate against an employee for exercising or attempting to exercise any rights provided under the FMLA.

96.    The acts of FirstService alleged herein were undertaken willfully, with knowledge and reckless disregard that they would violate Ms. Cabral's rights under the FMLA.

97.    The acts of FirstService alleged herein have caused damage and harm to Ms. Cabral, including lost earnings, salary, and other employment benefits, and have caused Ms. Cabral to suffer humiliation, emotional distress, and mental and physical pain and anguish, in an amount according to proof at trial.

98.    Ms. Cabral has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to 29 U.S.C. § 2617(a)(3), Ms. Cabral will move to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Cabral prays for judgment against FirstService as follows:

1.    For compensatory damages and other special and general damages according to proof, including, without limitation, lost earnings, salary, bonuses, and other job benefits Ms. Cabral would have received but for FirstService's wrongful conduct;

2.    Liquidated damages;

3.    Emotional distress damages;

4.    Punitive and exemplary damages in an amount sufficient to punish FirstService, and to make an example of and deter FirstService from engaging in such conduct in the future;

5.    For an award of reasonable attorneys' fees and costs incurred in this action;

6.    For pre-judgment and post-judgment interest, as provided by law; and

7.    For other and further relief as the Court may deem just and proper.


DATED:  September 29, 2025          GREENBERG GROSS LLP


By:    _/s/ Michael A. Burnette_
Jemma E.  Dunn
Matthew T. Hale
Michael A. Burnette

*Attorneys for Plaintiff*
*Shawnice  Cabral*

PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1

## __DEMAND FOR JURY TRIAL__

2          Plaintiff Shawnice Cabral hereby demands a jury trial.

3

4    DATED:  September 29, 2025          GREENBERG GROSS LLP

5

6                                       By:     */s/ Michael A. Burnette*
                                        _____
7                                           Jemma E.  Dunn
                                            Matthew T. Hale
8                                           Michael A. Burnette

9                                           *Attorneys for Plaintiff*
                                            *Shawnice  Cabral*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28